## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CITGO PETROLEUM CORPORATION,<br><br>*Plaintiff*<br><br>v.<br><br>PETROLEUM LOGISTICS SERVICE CORP., and JOSE MANUEL GONZALEZ TESTINO,<br><br>*Defendants*. | Civil Case No.<br>Jury demanded |

## PLAINTIFF CITGO PETROLEUM CORPORATION'S COMPLAINT

Plaintiff CITGO Petroleum Corporation ("CITGO" or "Plaintiff"), by and through its undersigned counsel, Willkie Farr & Gallagher LLP, alleges as follows against Defendants Petroleum Logistics Service Corp. ("PLS") and Jose Manuel Gonzalez Testino ("Gonzalez Testino") (collectively, "Defendants"):

## NATURE OF THE ACTION

1.      This action for breach of contract, fraud, and civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") arises from a conspiracy of illegal bribery and other criminal acts perpetrated by Gonzalez Testino, other individuals, PLS, and other entities under the control and indirect ownership of Gonzalez Testino.

2.      On or about March 5, 2014, CITGO entered into a Service Contract Agreement with PLS (the "Agreement"), pursuant to which PLS would provide procurement and logistics services in order to facilitate the sale and transportation of equipment, goods and/or materials to

CITGO's parent corporation, Petróleos de Venezuela, S.A. ("PDVSA"), the state-owned oil and natural gas company of the Bolivarian Republic of Venezuela.

3. As part of the Agreement, PLS represented that it would comply with all applicable laws in the provision of its services under the Agreement. PLS also agreed not to make any payments, give any gifts, or dispense any favors to CITGO's employees or their families. Finally, PLS agreed to immediately disclose to CITGO any common ownership between PLS and any vendor or service provider through which PLS performed its procurement and/or logistics services.

4. From 2014 to 2018, pursuant to the Agreement, CITGO entered into many transactions in which PLS served as a procurement and logistics vendor. For such work, PLS was paid a commission of 5.75 percent of the total purchase price of the goods, equipment, or material, as well as reimbursement of any expenses and/or costs, including costs from PLS subcontractors handling shipping and transportation services.

5. Starting at least as early as 2012, Gonzalez Testino took part in a conspiracy to enrich himself by improperly obtaining and retaining lucrative contracts with CITGO through corrupt and fraudulent means, including paying bribes to CITGO employees, who are considered, by virtue of being employees of a subsidiary of an instrumentality of the Bolivarian Republic of Venezuela (namely PDVSA), to be foreign officials under the U.S. Foreign Corrupt Practices Act ("FCPA"). This included, upon information and belief, the payment of bribes to (1) induce CITGO to enter into the Agreement with PLS, and (2) to induce CITGO to use PLS in particular procurement transactions conducted under the terms of that Agreement.

6. Such conduct constituted a violation of the anti-bribery provisions of the FCPA and hence a violation of U.S. law.

7.     On July 31, 2018, Gonzalez Testino was arrested at Miami International Airport on charges of conspiracy to violate the FCPA and of violating the anti-bribery provisions of the FCPA.

8.     On May 29, 2019, Gonzalez Testino pled guilty to one count each of conspiracy to violate the FCPA, violation of the anti-bribery provisions of the FCPA, and failure to file a foreign bank account report.  The criminal information to which Gonzalez Testino pled guilty described bribes to five CITGO employees.   Information ¶¶ 10–14, 23–26, *United States v. Jose M. Gonzalez-Testino*, No. 19-cr-00341 (S.D. Tex. May 14, 2019) ("Criminal Information").

9.     The Criminal Information further stated that these bribes were made in order to "help[] GONZALEZ's companies win PDVSA contracts to supply equipment and services, including logistics services."[1] *Id.* ¶ 22.

10.     Upon information and belief, Gonzalez Testino exercised control over PLS and, at all relevant times, acted as the indirect owner of PLS.

11.     Throughout this time period, PLS also failed to disclose its relationship with Gonzalez Testino.  Further, PLS provided false and misleading information to CITGO in an attempt to conceal its connection to Gonzalez Testino.

12.     Upon information and belief, Defendants paid bribes to CITGO employees, in violation of U.S. law and CITGO policies, in order to secure the Agreement between CITGO and PLS.

13.     Furthermore, upon information and belief, Defendants paid bribes to CITGO employees, in violation of U.S. law and CITGO policies, in order to win contracts for the purchase of goods and/or services under the Agreement, including the purchase of goods and/or services at grossly inflated prices.

---

[1] The Criminal Information refers to Gonzalez Testino as Gonzalez.

14.     Upon information and belief, Gonzalez Testino exercised control over and acted as the indirect owner of multiple entities that PLS used in providing procurement and logistics services under the Agreement.

15.     Accordingly, PLS failed to comply with applicable laws; paid bribes and dispensed gifts and favors to CITGO employees in violation of U.S. law and CITGO policies; and failed to disclose common ownership between PLS and other entities indirectly owned by Gonzalez Testino through which PLS performed its services in violation of the terms of the Agreement.

16.     CITGO was injured by PLS's breaches of the Agreement.  CITGO paid inflated prices for goods and services provided by the suppliers and the PLS subcontractors providing shipping and transportation services.  Moreover, CITGO paid PLS a commission of 5.75 percent of these inflated prices.  CITGO lost millions of dollars as a result.

17.     PLS explicitly committed in the Agreement to indemnify CITGO from and against any breach of the Agreement perpetrated by PLS, which includes expenses, court costs, and attorneys' fees associated with enforcing CITGO's rights under the Agreement.

18.     Accordingly, CITGO brings this action to recover the fees it has already paid to Defendants, to release CITGO from any further payment under the Agreement, and to recover any other compensatory damages in an amount to be addressed at trial, as well as all expenses, court costs, and attorneys' fees associated with investigating and remediating these matters and bringing this action.

## THE PARTIES

19.     **CITGO** is a company incorporated in Delaware with its principal place of business located at 1293 Eldridge Parkway, Houston, TX 77077.  CITGO is a wholly owned subsidiary of CITGO Holding, Inc., which is a wholly owned subsidiary of PDV Holding, Inc., which in turn is

a wholly owned subsidiary of PDVSA, which, as noted above, is the state-owned petroleum corporation of the Bolivarian Republic of Venezuela.

20.     **PLS** is a company incorporated in Panama.  Upon information and belief, its principal place of business is located at 1519 NW 82nd Ave, Miami, FL 33126.  PLS claims to be in the business of managing international purchases through a specialized procurement team that will look for the most suitable products according to their needs and requirements.

21.     **Jose Manuel Gonzalez Testino** is a dual United States and Venezuelan citizen. Upon information and belief, Gonzalez Testino is a resident of Miami, Florida.  Upon information and belief, Gonzalez Testino has at all relevant times exercised control over PLS and acted as its indirect owner.  Upon information and belief, Gonzalez Testino has had regular, continuous, and ongoing contacts with this jurisdiction, including through the provision of bribes and gifts and the dispensation of favors to CITGO employees on behalf of PLS.

### JURISDICTION AND VENUE

22.     This Court has federal question jurisdiction over the civil RICO claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), and supplemental jurisdiction over the breach of contract and fraud claims under 28 U.S.C. § 1367.

23.     This Court has diversity jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1332.  The parties are citizens of different states and the amount in controversy exceeds $75,000.

24.     Personal jurisdiction over the Defendants and venue are proper in this Court because, pursuant to the Agreement, PLS and CITGO agreed to "submit to the exclusive jurisdiction of the applicable State and Federal Courts situated in Houston, Texas, USA" for the purpose of resolving disputes arising out of the Agreement.

25.     In addition, PLS and CITGO specified in the Agreement that the "Agreement will be governed by and construed in accordance with the laws of the State of Texas without Preference to its conflict of law rules and statutes."

26.     Independently, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this Court has personal jurisdiction over the Defendants and a substantial part of the events or omissions giving rise to the claims occurred in this jurisdiction, including Gonzalez Testino's provision of bribes and gifts and his dispensation of favors to CITGO employees.

27.     Finally, venue is proper in this Court pursuant to the nationwide service provisions of 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

28.     On or about March 5, 2014, CITGO and PLS entered into the Agreement, pursuant to which PLS would provide procurement and logistics services in order to facilitate the sale and transportation of equipment, goods, and/or materials to CITGO's parent corporation, PDVSA.

29.     The Agreement laid out the terms for how PLS would provide its procurement and logistics services, and the representations that PLS and CITGO made to each other regarding their responsibilities and obligations under the contract.  Under the Agreement, CITGO was expected to provide details about specific purchase requirements for goods, and PLS would procure and deliver those goods pursuant to the terms of the Agreement.

30.     CITGO coordinated these and other procurement efforts on behalf of PDVSA through a dedicated CITGO group, which at times was called the Special Projects Department and at other times the Shareholder Procurement Department (hereinafter, the "Special Projects Department").  Special Projects Department employees were at all times subject to CITGO's corporate policies, which prohibited the receipt of bribes, kickbacks, or other improper benefits.

31.     The Agreement did not require CITGO to use PLS for certain purchases or for any specified amount of purchases.  Rather, it governed how the procurement and logistics services would be provided if CITGO were to request a specific purchase.  From 2014 to 2018, pursuant to the Agreement, CITGO entered into numerous transactions to procure goods and services on behalf of PDVSA, using PLS as the procurement and logistics vendor.  CITGO paid PLS and PLS-affiliated entities (at PLS's direction) over $20 million as part of these transactions.

32.     On July 31, 2018, Gonzalez Testino was arrested at Miami International Airport on charges of conspiring to violate the FCPA and violating the anti-bribery provisions of the FCPA. The criminal complaint filed in connection with this arrest alleged that Gonzalez Testino bribed PDVSA officials.

33.     Following the arrest of Gonzalez Testino, CITGO halted all transactions with PLS and requested that PLS provide information to CITGO, including answering certain questions that examined the relationship between PLS and Gonzalez Testino.

34.     Upon information and belief, PLS returned false and misleading information in response to these due diligence questions in an attempt to conceal the relationship between PLS and Gonzalez Testino, as well as PLS's participation in Gonzalez Testino's bribery scheme. CITGO subsequently learned that Gonzalez Testino exercised control over PLS and, at all relevant times, acted as the indirect owner of PLS.

35.     On May 29, 2019, Gonzalez Testino pled guilty to one count each of conspiring to violate the FCPA, violating the anti-bribery provisions of the FCPA, and failing to file a foreign bank account report.

36.     The Criminal Information to which Gonzalez Testino pled guilty referenced five CITGO employees who had received bribes from Gonzalez Testino, in violation of both U.S. law

and CITGO policy. *See id.* ¶¶ 10–14, 23–26. Four of these employees (hereinafter designated as Officials A–D in conformity with the allegations in the Criminal Information) were involved in either vetting vendors for CITGO bid panels and evaluating quotes for PDVSA procurements or supervising the Special Projects Department employees who did so. *Id.* ¶¶ 10–13. The fifth employee was a senior executive of CITGO (hereinafter designated as Official E in conformity with the allegations in the Criminal Information). *Id.* ¶ 14

37. The Criminal Information to which Gonzalez Testino pled guilty explained that the purpose of his conspiracy was to enrich himself by obtaining and retaining lucrative contracts and other business advantages with PDVSA and CITGO through corrupt and fraudulent means, including paying bribes to the CITGO employees. *Id.* ¶ 18.

38. The Criminal Information further explained that these bribes were made in order to "help[] GONZALEZ's companies win PDVSA contracts to supply equipment and services, including logistics services." *Id.* ¶ 22.

39. The Criminal Information that Gonzalez Testino pled guilty to included specific instances of Gonzalez Testino paying bribes to CITGO employees, to wit:

- o "On or about August 1, 2017, GONZALEZ and his co-conspirators caused a $57,472.11 bribe payment for Official A's benefit to be sent to" a "Swiss account." *Id.* ¶ 35.

- o "In or about 2014, GONZALEZ caused a $400,000 payment to be made to Official B in exchange for Official B's assistance to in [sic] winning a contract from PDVSA." *Id.* ¶ 36.

      o   "On or about September 7, 2017, GONZALEZ and his co-conspirators caused a $22,600 bribe payment for Official C to be made to a Houston bank account in the name of a relative of Official C."  *Id.* ¶ 37.

      o   "On or about July 28, 2017, GONZALEZ and his co-conspirators caused a $30,575 bribe payment for Official D to be sent to a Houston bank account held in the name of a relative of Official D."  *Id.* ¶ 38.

      o   "[D]uring Official E's tenure as a Citgo official, GONZALEZ provided Official E with original artwork, at least one flight on a private jet chartered by GONZALEZ, and, after Official E expressed displeasure with his corporate apartment, arranged the purchase of an apartment of Official E's choosing in the Houston area, and lease of that apartment to Citgo for Official E's use."  *Id.* ¶ 23.

40.    Upon information and belief, Defendants paid bribes, including cash, the use of residences for free or at below-market rates, entertainment, and gifts, such as a cellphone, watches, and jewelry, to CITGO employees in order to induce CITGO to enter into the Agreement.

41.    Moreover, because CITGO was not obligated under the Agreement to request that PLS make any purchases of goods, upon information and belief, Defendants also paid bribes to CITGO employees until at least 2018 to assist PLS in securing procurement and logistics transactions under the Agreement.  Upon information and belief, Defendants also paid bribes to CITGO employees to allow PLS to purchase goods and services at inflated prices from other entities affiliated with Gonzalez Testino, in violation of the terms of the Agreement.

42.    Each of these bribes and other payments violated CITGO policy, material terms of the Agreement, and applicable law.

**PLS Fraudulently Misrepresented Its Compliance with Applicable Law and
Breached the Agreement**

43.     In order to obtain the Agreement and the procurement transactions executed under
the Agreement, upon information and belief, Defendants manipulated the process by which
CITGO awarded contracts and transactions to procurement and logistics vendors by paying bribes
to CITGO Special Projects Department employees and their supervisors.

44.     Upon information and belief, despite knowing that Gonzalez Testino was violating
applicable law, including the FCPA, to obtain the Agreement and the subsequent transactions
pursuant to it, PLS represented in Section 7(e) of the Agreement that it would "provide the Services
in full compliance with all applicable national, regional and local laws, rules, regulations,
ordinances, orders, decisions and decrees of any governmental authority, whether now or
hereinafter in effect."

45.     PLS further agreed in Section 19(a) that it would, "in the performance of all of its
rights and obligations under this Agreement, comply with all applicable laws, rules and regulations
issued by applicable governmental authorities."

46.     PLS further agreed in Section 23 that it would, "in the performance of this
Agreement, comply with all applicable laws and regulations."

47.     PLS also acknowledged its awareness of the FCPA in Section 19(b) of the
Agreement, which stated that "[PLS] acknowledges that it is familiar with the U.S. Foreign Corrupt
Practices Act ('FCPA') and its prohibitions regarding the payment of [sic] giving of anything of
value, either directly or indirectly, to an official of a foreign government or political party for the
purpose of influencing an act or decision in his official capacity or inducing the official to use his
or his party's influence with that government, to obtain or retain business involving the products."

PLS also agreed in that section that it "shall not make any such payments" (*i.e.*, payments in violation of the FCPA).

48.     Upon information and belief, PLS made these misrepresentations understanding that CITGO would not enter into a contract or engage in transactions pursuant to that contract absent representations by PLS that it would comply with applicable laws, including the FCPA.

**PLS Breached the Agreement by Making Payments to CITGO Employees**

49.     PLS represented in Section 18 of the Agreement that neither PLS nor "anyone acting on [its] behalf will directly or indirectly pay (a) any salaries, commissions or fees of any kind, or (b) dispense favors, gifts or entertainment of greater than token or nominal value to the other party employees or any members of their families."

50.     Upon information and belief, Defendants made cash payments and dispensed favors, gifts, and entertainment to CITGO employees in violation of Section 18 of the Agreement and CITGO policy.

51.     Upon information and belief, Gonzalez Testino and PLS made such payments and dispensed gifts, favors, and entertainment in order to obtain and retain the Agreement and transactions conducted pursuant to the Agreement.

**PLS Breached the Agreement by Engaging in Self-Dealing and Failing to Disclose Its Conflicts of Interest**

52.     PLS represented in Section 18 of the Agreement that PLS "shall immediately disclose to CITGO any common ownership between Contractor [PLS] and any vendor or service provider through which Contractor performs the Services."

53.     Upon information and belief, Gonzalez Testino exercised control over and acted as the indirect owner of both PLS and multiple entities from which PLS purchased goods on behalf

of CITGO and PDVSA and from which PLS subcontracted for shipping and transportation services.

54.     Upon information and belief, the contracts awarded to PLS that utilized other Gonzalez Testino entities involved inflated prices of the goods or services procured, causing CITGO to both overpay these entities for their services and to overpay PLS because it was compensated via a commission of 5.75 percent of the total sale price.

55.     PLS did not "immediately disclose" to CITGO the common ownership between PLS and these entities utilized in procurement transactions for CITGO.  Indeed, it has *never* disclosed such information as required.

56.     CITGO was injured by PLS's breaches of the Agreement.  Because CITGO paid PLS subcontractors for shipping and transportation costs at an inflated rate, paid suppliers for goods sold at inflated prices, and paid PLS a percentage commission on the total prices of goods, CITGO lost millions of dollars.

57.     Despite these breaches of the Agreement, PLS continues to seek approximately $2 million dollars in commissions and fees for incomplete transactions, as well as warehousing fees for storing the inventory related to these transactions.  PLS has failed to mitigate its alleged damages by liquidating the inventory.

**PLS Indemnified CITGO for Its Breach of the Agreement**

58.     Under Section 19(e) of the Agreement, PLS agreed that "[i]n the event that either party breaches any provision of this Agreement or Addendum related hereto, the breaching party agrees to indemnify, defend and hold harmless the other party from any . . . cost incurred by the non-breaching party."

59.     As described in Paragraphs 28 to 57, PLS breached the Agreement in multiple ways.  As such, PLS must indemnify CITGO for all costs incurred as a result of this breach,

including all attorneys' fees associated with investigating and remediating these matters and bringing this action.

### Defendants' RICO Violations Injured CITGO

60.     **Culpable Persons**: Gonzalez Testino and PLS, each persons under 18 U.S.C. § 1961(3), individually and knowingly violated 18 U.S.C. § 1962(c) through a pattern of racketeering activity and violated 18 U.S.C. § 1962(d) through their conspiracy to violate 18 U.S.C. § 1962(c).

61.     **Enterprise**: Beginning at least as far back as 2012 and continuing until July 2018, Gonzalez Testino, PLS, and others formed an association-in-fact for the common and continuing purpose described herein that constituted an enterprise within the meaning of 18 U.S.C. § 1961(4). The enterprise, managed by Gonzalez Testino, sought to enrich Gonzalez Testino by obtaining and retaining lucrative contracts and other business advantages for multiple entities under his control and indirect ownership, including, upon information and belief, PLS.  As part of this enterprise, Gonzalez Testino and PLS knowingly and intentionally sought such contracts from CITGO and its parent corporation, PDVSA, through corrupt and fraudulent means, including paying bribes to CITGO executives and employees in violation of the anti-bribery provisions of the FCPA.

62.     **Effect on Interstate and Foreign Commerce**: Upon information and belief, Defendants did willfully use and cause to be used the means and instrumentalities of interstate commerce in furtherance of the enterprise.

63.     PLS and Gonzalez Testino, as part of the operation of the enterprise, engaged in interstate commerce through the logistics and procurement transactions with CITGO.

64.     PLS transmitted numerous emails sent via instrumentalities of interstate commerce to further these transactions with CITGO.  Examples of these emails include:

- On December 21, 2013, Ruben Gonzalez, then Director of Operations at PLS, emailed CITGO a proposal for the use of PLS as a procurement and logistics vendor.

- On February 18, 2014, Ruben Gonzalez emailed CITGO wiring instructions for PLS.

- On March 6, 2014, Ruben Gonzalez emailed CITGO a scanned copy of the fully executed Agreement.

- On June 18, 2015, Javier Aurrecoechea, then Director of Logistics at PLS, emailed CITGO to negotiate a special change in commission percentage for a specific transaction under the Agreement.

- On January 4, 2016, Aurrecoechea emailed CITGO regarding CITGO's potential use of PLS's inspection services.

- On May 8, 2017, Hector Sarcos, then Operations Manager at PLS, emailed CITGO regarding price quotes for air shipment related to a procurement transaction.

- On July 20, 2018, José Humberto Lozada, then working in the finance function at PLS, emailed CITGO regarding payment of funds to PLS.

65.     Upon information and belief, Gonzalez Testino also transmitted information sent via instrumentalities of interstate commerce to further these transactions with CITGO.  These include, according to the Criminal Information to which Gonzalez Testino pled guilty, messages sent "over email and through encrypted messaging services" regarding how Gonzalez Testino, his employees, and his co-conspirators "would obtain and retain contracts and other business

advantages with PDVSA by providing things of value to PDVSA officials," including CITGO employees.  *See id.* ¶ 21.

66.    Gonzalez Testino and PLS also engaged in interstate travel in furtherance of this enterprise.  Examples of this travel include:

> o    Travel by Aurrecoechea to Houston, Texas on April 9, 2015, to meet with CITGO employees and discuss information regarding PLS's operations and the potential use of PLS as a procurement and logistics vendor in CITGO's future procurement transactions.

> o    Travel by Aurrecoechea to Houston, Texas on August 13, 2015, to meet with CITGO employees and discuss further PLS's operations and the potential use of PLS as a procurement and logistics vendor in CITGO's future procurement transactions.

> o    Travel by Gonzalez Testino to Houston, Texas in mid-July 2018 to meet with a CITGO employee and discuss destroying evidence related to the bribery scheme.

> o    Travel by Gonzalez Testino to Houston, Texas on July 27, 2018, to meet with a CITGO employee and discuss a potential federal investigation into the bribery scheme and Gonzalez Testino's planned departure to Venezuela.

67.    PLS and Gonzalez Testino, as part of the operation of the enterprise, also utilized instrumentalities of interstate commerce in paying bribes via wire transfers, as described in more detail in Paragraph 72.

68.    **Racketeering Activity**: Gonzalez Testino and PLS through the enterprise engaged in a pattern of racketeering activity that included violations of the Travel Act, 18 U.S.C. § 1952,

an enumerated RICO offense, 18 U.S.C. § 1961(1)(B).  They operated the enterprise in violation of the Travel Act through the use of the instrumentalities of interstate or foreign commerce with the intent to facilitate violations of the anti-bribery provisions of the FCPA.  As described in Paragraphs 62–67, PLS and Gonzalez Testino facilitated the bribery scheme via emails and interstate travel.

69.     The Texas Penal Code prohibits paying bribes to employees of companies to induce those employees to breach their fiduciary duties to their employees.  Through the enterprise Gonzalez Testino and PLS further engaged in a pattern of racketeering activity that included bribes paid to CITGO and PDVSA employees.  Specifically, as described in Paragraph 72, Gonzalez Testino and PLS conferred benefits on CITGO employees, fiduciaries of CITGO for the purpose of Tex. Penal Code § 32.43, who accepted these benefits on agreement or understanding that the benefits would improperly influence the conduct of these CITGO employees in relation to CITGO's affairs in direct violation of CITGO policy.  The bribes therefore constituted felony violations of the Commercial Bribery section of the Texas Penal Code, Tex. Penal Code § 32.43, which is punishable by imprisonment of up to two years, thereby constituting a RICO offense under 18 U.S.C. § 1961(1)(A).

70.     Through the enterprise, Gonzalez Testino and PLS further engaged in a pattern of racketeering activity that included completing monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, an enumerated RICO offense under 18 U.S.C. § 1961(1)(B).  As described in Paragraph 72, Gonzalez Testino and PLS engaged in monetary transactions in the form of wire transfers in a value greater than $10,000.  Upon information and belief, the funds involved in these monetary transactions were criminally derived property resulting from specified unlawful activity.

16

71.     Through the enterprise Gonzalez Testino and PLS further engaged in a pattern of racketeering activity that included laundering monetary instruments in violation of 18 U.S.C. § 1956(a)(2)(A), an enumerated RICO offense under 18 U.S.C. § 1961(1)(B).  As described in Paragraph 72, Gonzalez Testino and PLS transferred funds from Switzerland and Curaçao to banks in Texas and Florida with the intent to promote the carrying on of specified unlawful activity, including violations of the FCPA.

72.     Gonzalez Testino and PLS caused payments to be made corruptly to foreign officials, including PDVSA and CITGO employees, from at least 2012 to July 2018 for the purpose of inducing the PDVSA and CITGO officials to misuse their positions to help PLS and other companies controlled and indirectly owned by Gonzalez Testino to secure and retain business with PDVSA and CITGO.  Upon information and belief, Gonzalez Testino engaged in the following predicate acts:

o   From November 27, 2012 to June 3, 2013, Gonzalez Testino and his co-conspirators caused eleven bribe payments for a total of $629,000 to be paid to Cesar David Rincon Godoy, a Venezuelan national who was employed by PDVSA and its subsidiaries from at least 2011 until June 2013, in exchange for Rincon's assistance with PDVSA contracts.  These payments were wired from Swiss bank accounts held in the name of entities that were under Gonzalez Testino's control and indirect ownership to a bank account in the Southern District of Texas held in the name of a company owned by one of Rincon's relatives and a bank account in Florida held in the name of a different company owned by one of Rincon's relatives.  The below table describes each transaction.

| Date | Rincon Beneficiary Bank Account | Amount |
|---|---|---|
| 11/27/2012 | Texas Account | $50,000 |
| 1/15/2013 | Texas Account | $50,000 |
| 3/5/2013 | Florida Account | $50,000 |
| 3/7/2013 | Florida Account | $50,000 |
| 3/21/2013 | Florida Account | $50,000 |
| 4/8/2013 | Florida Account | $75,000 |
| 4/17/2013 | Florida Account | $75,000 |
| 4/24/2013 | Florida Account | $50,000 |
| 5/2/2013 | Florida Account | $29,000 |
| 5/14/2013 | Florida Account | $100,000 |
| 6/3/2013 | Florida Account | $50,000 |

o   On or about April 4, 2013, Gonzalez Testino caused a $50,000 bribe payment to be sent from a Swiss bank account under his control to a bank account in the Southern District of Texas in the name of Alfonzo Eliezer Gravina Munoz, a dual U.S. and Venezuelan citizen and resident of Texas employed by PDVSA and by wholly owned subsidiaries and affiliates thereof from in or around 1998 until in or around March 2014.

o   On or about April 23, 2013, Gonzalez Testino caused a $50,000 bribe payment to be sent from a Swiss bank account under his control to a bank account in the Southern District of Texas in Gravina's name.

o   In or about May 2017, Gonzalez Testino and his co-conspirators arranged for an associate of Official A to travel to Switzerland to open a bank account in the associate's name to which Gonzalez Testino could wire bribe payments for Official A.

o   On or about August 1, 2017, Gonzalez Testino and his co-conspirators caused a $57,472.11 bribe payment for Official A's benefit to be sent to a Swiss bank account.

18

  ○ In or about 2014, Gonzalez Testino caused a $400,000 payment to be made to Official B in exchange for Official B's assistance in winning a contract from PDVSA.

  ○ On or about September 7, 2017, Gonzalez Testino and his co-conspirators caused a $22,600 bribe payment for Official C to be made to a Houston bank account in the name of a relative of Official C.

  ○ On or about July 28, 2017, Gonzalez Testino and his co-conspirators caused a $30,575 bribe payment for Official D to be sent from a Curaçao bank account to a Houston bank account held in the name of the nephew of Official D.

  ○ During Official E's tenure as a CITGO official, Gonzalez Testino provided Official E with original artwork, at least one flight on a private jet chartered by Gonzalez Testino, and, after Official E expressed unhappiness with his corporate apartment, arranged for the purchase of an apartment of Official E's choosing in the Houston area, and the lease of that apartment to CITGO for Official E's use.

73. **Injury**: CITGO was injured by the enterprise's pattern of racketeering activity. Upon information and belief, the contracts awarded to PLS that utilized other Gonzalez Testino-controlled entities contained inflated prices for the goods or services to be procured, causing CITGO to both overpay these entities for their services/goods and to overpay PLS because it was compensated via a commission calculated as a percentage of the total sale price, in addition to inflated rates for shipping and transportation costs.  From 2014 to 2018, CITGO entered into transactions to procure goods and services on behalf of PDVSA using PLS as a procurement and logistics vendor, paying a total of over $20 million.  PLS and other entities indirectly owned and

controlled by Gonzalez Testino continue to seek further payment.  Further, as a result of this pattern of racketeering activity, CITGO incurred significant legal fees associated with investigating and remediating these matters and bringing this action.

74.     **Conspiracy**: Moreover, PLS and Gonzalez Testino agreed to participate in the enterprise and the conduct described above, including an agreement that Gonzalez Testino would pay multiple bribes.

## COUNT ONE: BREACH OF CONTRACT COMPLIANCE WITH APPLICABLE LAWS

75.     CITGO repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

76.     On March 5, 2014, CITGO entered into the Agreement with PLS, pursuant to which PLS agreed to perform certain services identified above.

77.     CITGO paid consideration for those services in performance of its obligations under the Agreement.

78.     PLS breached Sections 7(e), 19(a), and 23 of the Agreement through its failure to comply with applicable laws while providing services to CITGO, including, upon information and belief, through Gonzalez Testino's violations of the FCPA through payments of bribes to CITGO employees to secure contracts on behalf of PLS and other entities controlled and indirectly owned by Gonzalez Testino.

79.     As a direct and proximate result of PLS's breaches of the Agreement, CITGO has incurred substantial damages.

80.     CITGO is entitled to recover compensatory damages (and interest) at an amount to be awarded at trial and to be released from any further payment under the Agreement.

## COUNT TWO: BREACH OF CONTRACT PAYMENTS TO CITGO EMPLOYEES

81.     CITGO repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

82.     PLS breached Section 18 of the Agreement through its payment of funds and provision of favors to CITGO employees, including, upon information and belief, payments of bribes to CITGO employees to secure contracts on behalf of PLS and other entities controlled and indirectly owned by Gonzalez Testino.

83.     As a direct and proximate result of PLS's breaches of the Agreement, CITGO has incurred substantial damages.

84.     CITGO is entitled to recover compensatory damages (and interest) at an amount to be awarded at trial and to be released from any further payment under the Agreement.

## COUNT THREE: BREACH OF CONTRACT CONFLICT OF INTEREST

85.     CITGO repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

86.     PLS further breached Section 18 of the Agreement by failing to immediately disclose that multiple suppliers used in procurement transactions for which PLS was the procurements and logistics vendor shared common ownership with PLS, including, upon information and belief, that PLS and such other entities were controlled and indirectly owned by Gonzalez Testino.

87.     As a direct and proximate result of PLS's breaches of the Agreement, CITGO has incurred substantial damages.

88.     CITGO is entitled to recover compensatory damages (and interest) at an amount to be awarded at trial and to be released from any further payment under the Agreement.

21

## COUNT FOUR: FRAUD

89.     CITGO repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

90.     PLS made (1) a material representation; (2) that was false when made; (3) PLS either knew it was false, or made it without knowledge of its truth; (4) PLS made it with the intent that it should be acted upon; (5) CITGO acted in reliance; and (6) CITGO was injured as a result.

91.     On March 5, 2014, PLS made a material representation at the time CITGO and PLS entered into the Agreement that it would "provide the Services in full compliance with all applicable national, regional and local laws, rules, regulations, ordinances, orders, decisions and decrees of any governmental authority, whether now or hereinafter in effect."

92.     Upon information and belief, PLS was aware that Gonzalez Testino had bribed CITGO employees on behalf of PLS to secure the Agreement for PLS, in violation of the FCPA, at the time when PLS made this representation, and PLS was aware that Gonzalez Testino would continue to bribe CITGO employees to secure procurement transactions for PLS and the other entities controlled and indirectly owned by Gonzalez Testino.

93.     It was clear that this representation was material to the Agreement, and, upon information and belief, PLS made this representation with the intent to convince CITGO to enter into this Agreement with PLS even though PLS had no intention of performing in accordance with this representation.

94.     CITGO entered into the Agreement relying on this representation from PLS.

95.     As a direct and proximate result of PLS's fraudulent misrepresentations, CITGO has incurred substantial damages.

96.     CITGO is entitled to recover compensatory damages (and interest) and punitive damages at an amount to be awarded at trial, as well as to be released from any further payment under the Agreement.

## COUNT FIVE: INDEMNITY

97.     CITGO repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

98.     As part of the Agreement, PLS agreed to indemnify CITGO for any damages resulting from PLS's breach of the Agreement.  Such indemnification includes the expenses, court costs, and attorneys' fees associated with investigating and remediating these matters and bringing this action.

99.     As described above, and in particular as described in Counts 1 through 3 above, PLS repeatedly breached the Agreement.

100.    Plaintiff is therefore entitled to recover not only all damages resulting from Defendant's breach of the Agreement, but also all expenses, court costs, and attorneys' fees associated with investigating and remediating these matters and bringing this action.

## COUNT SIX: RICO § 1962(c)

101.    CITGO repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

102.    Gonzalez Testino managed and operated and PLS operated an enterprise whose activities affected interstate commerce.

103.    Upon information and belief, Gonzalez Testino and PLS agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity including violations of the Travel Act through violations of the anti-bribery provisions of the FCPA.

104.    These multiple acts of racketeering form a "pattern of racketeering activity" lasting from at least 2012 to July 2018.  Each and every predicate act of money laundering, bribery in violation of Texas criminal law, and travel and wire transfers facilitating violations of the Travel Act and the FCPA was related in that the purpose of each was to enrich Gonzalez Testino by obtaining and retaining lucrative contracts and other business advantages with PDVSA and CITGO through corrupt and fraudulent means, including paying bribes to the CITGO employees described above, and to conceal the evidence of this scheme.  Each predicate act involved the same or similar participants: (1) Gonzalez Testino; (2) PLS as a procurement and logistics vendor; and, often, (3) other entities controlled and indirectly owned by Gonzalez Testino that supplied the goods PLS was engaged to procure and deliver to PDVSA.  CITGO was the common victim of these racketeering activities.

105.    PLS and Gonzalez Testino have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

106.    As a direct and proximate result of Gonzalez Testino's and PLS's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in that: Upon information and belief, the Gonzalez Testino-controlled entities would inflate the prices of the goods or services to be procured by PLS pursuant to the Agreement, causing CITGO to both overpay these entities for their services and goods and to overpay PLS because PLS was compensated via commissions calculated as a percentage of the total sale price. From 2014 to 2018, CITGO entered into transactions to procure goods and services on behalf of PDVSA using PLS as a procurement and logistics vendor, paying a total of over $20 million.

107.    CITGO is entitled to receive treble damages for all actual injury caused by Defendants' RICO violation at an amount to be awarded at trial, all expenses, court costs, and attorneys' fees associated with investigating and remediating these matters and bringing this action, and to be released from any further payment obligations under the Agreement.

## COUNT SEVEN:  RICO § 1962(d)

108.    CITGO repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

109.    As set forth above, PLS and Gonzalez Testino agreed and conspired to violate 18 U.S.C. § 1962(c).

110.    PLS and Gonzalez Testino knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

111.    As a direct and proximate result of the conspiracy, the overt acts taken in furtherance of that conspiracy, and the violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in its business and property.  Upon information and belief, the Gonzalez Testino-controlled entities would inflate the prices of the goods or services to be procured by PLS pursuant to the Agreement, causing CITGO to both overpay these entities for their services and goods and to overpay PLS because PLS was compensated via commissions calculated as a percentage of the total sale price. From 2014 to 2018, CITGO entered into transactions to procure goods and services on behalf of PDVSA using PLS as a procurement and logistics vendor, paying a total of over $20 million.

112.    CITGO is entitled to receive treble damages for all actual injury caused by Defendants' RICO violation at an amount to be awarded at trial, all expenses, court costs, and

attorneys' fees associated with investigating and remediating these matters and bringing this action, and to be released from any further payment under the Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, CITGO requests that the Court:

a.      Adjudge and decree that Defendants are liable for breaches of contract, fraud, violation of 18 U.S.C. § 1962(c), and violation of 18 U.S.C. § 1962(d), as alleged herein;

b.      Enter a judgment against Defendants that awards CITGO compensatory damages (plus interest) for its injuries resulting from the breaches of contract, treble damages for all actual damage suffered as a result of Defendants' RICO violations, and punitive damages under CITGO's fraud claim at an amount to be decided at trial; relieves Plaintiff from any further payments under the Agreement; and awards expenses, costs, and attorneys' fees to CITGO associated with investigating and remediating these matters and bringing this action; and

c.      Grant such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff CITGO hereby demands a trial by jury on all issues raised in the Complaint herein.

Dated:  Houston, Texas
          May 26, 2020

                          **WILLKIE FARR & GALLAGHER LLP**

                    By: /s/ Jennifer Hardy

                        Jennifer Hardy
                        Attorney-in-Charge
                        Texas Bar No. 24096068
                        Southern District of Texas Bar No. 2828253
                        Willkie Farr & Gallagher LLP
                        600 Travis Street
                        Houston, TX 77002
                        Tel: (713) 510-1766
                        Fax: (713) 510-1799
                        JHardy2@willkie.com

                        Michael Gottlieb
                        Robert Meyer
                        Sarah Wastler
                        Andrew English
                        Andrew Bouriat
                        Of Counsel
                        Willkie Farr & Gallagher LLP
                        1875 K Street, N.W.
                        Washington, D.C. 20006
                        Tel: (202) 303-1000
                        Fax: (202) 303-2000

                        *Attorneys for Plaintiff CITGO Petroleum*
                        *Corporation*